JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
AmerisourceBergen Drug Corporation
1300 Morris Drive
Chesterbrook, PA 19087

### DEFENDANTS
DGN Pharmacy, Inc. d/b/a DiGino's Apothecary
255 Valley Boulevard
Wood Ridge, NJ 07075

(b) County of Residence of First Listed Plaintiff   Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bergen
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Maurice R. Mitts, Esq., Mitts Law, LLC
1822 Spruce Street, Philadelphia, PA 19103
(215) 866-0110

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(a)

Brief description of cause:
Breach of Contract and Failure to Pay for Pharmaceutical Products Purchased from Plaintiff

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 284,763.14

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____
DOCKET NUMBER _____

DATE
04/04/2014

SIGNATURE OF ATTORNEY OF RECORD
Maurice R. Mitts, Esq. */s/*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

**AmerisourceBergen Drug Corporation**  :          CIVIL ACTION
                                       :
                    v.                 :
                                       :
**DGN Pharmacy, Inc. d/b/a DiGino's Apothecary** :   NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.         ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                    ( X )

_April 7, 2014_           _Maurice R. Mitts_                         _____
Date                       Attorney-at-law                            Attorney for Plaintiff

_(215) 866-0110_          _(215) 866-0111_                           _mmitts@mittslaw.com_
Telephone                  FAX Number                                 E-Mail Address

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION<br>1300 Morris Drive<br>Chesterbrook, PA 19087<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>DGN PHARMACY, INC.<br>d/b/a DiGino's Apothecary<br>255 Valley Boulevard<br>Wood Ridge, NJ 07075<br><br>　　　　　　Defendant. | Civil Action No.: _____ |

## COMPLAINT

Plaintiff AmerisourceBergen Drug Corporation ("AmerisourceBergen") brings this Complaint against Defendant DGN Pharmacy, Inc., d/b/a DiGino's Apothecary ("DiGino's Apothecary") seeking compensation for Defendant's breach of contract and failure to pay for pharmaceutical products purchased from Plaintiff. In support of this complaint, Plaintiff alleges:

## PARTIES

1.　　Plaintiff AmerisourceBergen, a pharmaceutical services company providing drug distribution and related services, is incorporated in Delaware and maintains its principal place of business at 1300 Morris Drive, Chesterbrook, Pennsylvania 19087.

2.　　Defendant DiGino's Apothecary is incorporated under the laws of the State of New Jersey and maintains its principal place of business at 255 Valley Boulevard, Wood Ridge, New Jersey 07075.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the threshold $75,000 requirement, exclusive of interest and costs.

4. Pursuant to Paragraph 7 of the Credit Agreement between the parties, the defendant consented to jurisdiction and venue before the United States District Court for the Eastern District of Pennsylvania. A true and correct copy of the Credit Application and Credit Agreement (with tax identification numbers redacted) ("Credit Agreement") is attached hereto and incorporated herein as Exhibit "A."

5. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because, inter alia, a substantial part of the events giving rise to this claim occurred in this judicial district and because the Defendant is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

### *The Contract*

6. DiGino's Apothecary executed and submitted a Credit Application and Credit Agreement to AmerisourceBergen, providing the terms of their agreement. *See* Exhibit A at ¶7.

7. AmerisourceBergen sold pharmaceutical goods and services to DiGino's Apothecary pursuant to the Credit Agreement and the additional terms specified in the Invoice Terms and Conditions (printed on the reverse side of each invoice page). A true and correct copy of the Invoice Terms and Conditions ("Terms & Conditions") is attached hereto and incorporated herein as Exhibit "B." Together, the Terms and Conditions and the Credit Agreement shall be referred to herein as the "Agreement."

8. Pursuant to the terms of the Credit Agreement, AmerisourceBergen is a secured creditor. To secure all of Defendant's liabilities to AmerisourceBergen, Defendant granted Plaintiff a "purchase money security interest in Inventory and Proceeds" and "a lien upon and security interest in all its personal property" including all of Defendant's "(a) Accounts; (b) Inventory; (c) Chattel Paper; (d) Commercial Tort Claims . . . (e) Deposit Accounts; (f) Documents; (g) Equipment; (h) General Intangibles; (i) Goods; (j) Instruments; (k) Investment Property; (l) Letter of Credit Rights; ..." *See* Exhibit A at ¶ 2.

### *The Transactions*

9. During the period on or about June 1, 2012 through December 13, 2013, DiGino's Apothecary purchased pharmaceutical goods and services from AmerisourceBergen pursuant to the Agreement and has failed to pay for those products. A true and correct copy of the January 3, 2014 Statement ("Statement") is attached hereto and incorporated herein as Exhibit "C."

10. The Agreement provides that AmerisourceBergen may assess a per day late fee of 0.05% on the outstanding balance due until paid. *See* Terms and Conditions, attached as Exhibit "B" at ¶ 20.

11. The total amount due from DiGino's Apothecary to AmerisourceBergen as of January 3, 2014 for unpaid pharmaceutical goods and services, including the late fees, is $284,763.14. *See* Exhibit "C."

12. Additional late fees continue to be assessed pursuant to the Agreement. *See* Terms and Conditions, attached as Exhibit "B" at ¶ 20.

3

13. Despite attempts to collect the amounts due, DiGino's Apothecary has not paid Plaintiff.

### *DiGino's Apothecary Breached the Contract by Failing to Pay AmerisourceBergen*

14. Under Paragraph 6 of the Credit Agreement and under Paragraph 10 of the Terms and Conditions, DiGino's Apothecary agreed that if its payments were late, it would pay AmerisourceBergen's collection costs, expenses and attorney's fees. *See* Exhibit "A" at ¶ 6 and Exhibit "B" at ¶10.

15. Pursuant to the Credit Agreement, if DiGino's Apothecary "fails to pay when due any amount owing," AmerisourceBergen may "accelerate and declare all Obligations immediately due and payable without demand or notice" and exercise all rights and remedies available at law or equity. Exhibit "A" at ¶¶ 4-5.

### COUNT I – BREACH OF CONTRACT

16. AmerisourceBergen repeats and re-alleges all of the preceding paragraphs as if fully set forth at length again herein.

17. AmerisourceBergen provided pharmaceutical goods and services to DiGino's Apothecary pursuant to the Agreement as specified in the Terms and Conditions and Credit Agreement.

18. DiGino's Apothecary breached the Agreement by failing to pay AmerisourceBergen for the pharmaceutical goods and services Defendant received.

19. DiGino's Apothecary breached the Agreement by failing to pay all amounts due to AmerisourceBergen, including amounts for the pharmaceutical goods and services received, plus late fees and collection costs.

20. Through the aforementioned actions, DiGino's Apothecary has breached the Agreement and proximately caused monetary damage to AmerisourceBergen.

21. DiGino's Apothecary is liable to AmerisourceBergen for, *inter alia,* payment in full for all goods and services received (as listed in the Statement dated January 3, 2014), plus ongoing late fees assessed at 0.05% per day. *See* Credit Agreement, attached as Exhibit "A"; Terms and Conditions, attached as Exhibit "B" and Statement, attached as Exhibit "C."

22. DiGino's Apothecary is also liable for AmerisourceBergen's attorneys' fees and costs incurred in connection with this action. *See* Credit Agreement, attached as Exhibit "A"; Terms and Conditions, attached as Exhibit "B."

23. Defendant's breaches of its obligations under its Agreement with AmerisourceBegen entitle AmerisourceBergen to a judgment in its favor and against Defendant DGN Pharmacy, Inc., d/b/a DiGino's Apothecary in the amount of $284,763.14, together with interest, continuing late fees in the amount of 0.05% per day from January 3, 2014 until paid, attorney's fees and all other costs of collection.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendant DGN Pharmacy, Inc., d/b/a DiGino's Apothecary in the amount of $284,763.14, together with interest, continuing late fees in the amount of 0.05% per day from January 3, 2014 until paid, attorney's fees, all other costs of collection and such further and additional relief as this Court deems just and proper.

                                    Respectfully submitted,

                                    MITTS LAW, LLC

Dated: April 7, 2014

                                    Maurice R. Mitts, Esquire
Rebecca Field Emerson, Esquire
Attorney I.D. No.: 50297/207778
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112/0118 (telephone)
(215) 866-0113/0119 (facsimile)

*Attorney for Plaintiff*
*AmerisourceBergen Drug Corporation*

# EXHIBIT A

**DiGino's Apothecary**
Wood Ridge, NJ 07075

**Credit Application & Credit Agreement**
1000025619
06.05.2012

**Bellco** DRUG CORP

**AmerisourceBergen**
Credit Application and Credit Agreement

Applicant: DGN Pharmacy P/B/A DiGino's (Company Name)

Account # _____ (for office use only)

AmerisourceBergen takes great pride as the premier provider of health care products and services. We want to thank you for taking time to complete this Credit Application and Agreement. Welcome to the AmerisourceBergen family.

### Applicant

| Field | Value |
|---|---|
| Company: | DGN Pharmacy, Inc. |
| D/B/A (if any): | DIGINO'S APOTHECARY |
| Address: | 255 Valley Blvd. |
| City/State/Zip: | Wood Ridge, NJ. 07075 |
| Shipping Address (if different): | Same |
| Billing Address (if different): | Same |
| Phone # | 201 365-0344 |
| Fax # | 201-334-0700 |
| Email | larry@groupcx.net |
| Servicing Division: | BETHLEHEM |
| Year business started: | 2009 |
| Current owners since: | 2009/2011 |
| State of Formation/Incorporation: | NJ |

Business Form: ☐ Sole Proprietorship  ☒ Corporation  ☐ General Partnership  ☐ Limited Partnership  ☐ LLC

Tax ID #: 26-4694846   Organization ID # (issued by the State of Formation): 0400298233   NABP# _____

Type of Business: ☐ Drug Store  ☒ Rx Pharmacy  ☐ DME/HHC  ☒ Closed Door (contract name) Conv. on or about 10/1/2012
☐ Hospital  ☐ Chain  ☐ Distributor  ☐ Other (specify) _____

Estimated Monthly Purchases $ 450,000   Rx 95 %   OTC 5 %   DME/HHC 0 % 3rd Party 0 %

- Attach copies of Articles/Certificate of Incorporation, Certificate of Formation, Partnership Agreement, Certificate of Partnership or other evidence of entity formation, and any d/b/a(s), as applicable
- Attach copies of DEA license, Pharmacy Board Permit, Sales Tax Permit, and most current financial statement.

Ownership (list each person owning 10% or more; attach additional pages if needed):

Name: Dimitry Notkin   Address: 150 Gaynor Pl. Glenrock NJ 07452   Phone #: 201-365-0344
% Ownership: 50%   Registered Pharmacist? ☒ Y ☐ N   License# _____
Social Security # _____   Title with Applicant _____

Name: GAX Holdings LLC.   Address: PO BOX 386 Roseland, NJ 07068   Phone #: _____
% Ownership: 50%   Registered Pharmacist? ☐ Y ☒ N   License# _____
Social Security # _____   Title with Applicant _____

### References:

| Supplier | Address | Phone # | Fax # | Account # |
|---|---|---|---|---|
| AndA | | | | |
| Cardinal | | | | |

Bank: _____   Address: _____   Phone #: _____   Fax #: _____   Account #: _____

Premises are: ☒ Leased  ☐ Owned   If leased: Minen Properties   Landlord Name   973-722-1085   Telephone #

Insurance Agent: Northstar Ins. 2200 65th St   Brooklyn NY 11204   Agent Name & Address   Telephone # 718-375-0025   Policy # 329000713101-03/000

By signing below, Applicant (a) certifies that all information is complete and accurate and (b) agrees to be bound by the attached Credit Agreement.

Account Manager: John Dutch   6-1-2012 (Date)   Applicant's Signature: _____   6/1/2012 (Date)
Print Name: Lawrence Margolis
Title: Pres.

| For Office Use: | Terms Approved: | Credit Line: |
|---|---|---|
| Submitted by: | Approved by: | |

Applicant: DGN Pharmacy Inc. DBA Rigino's (Company Name)

## CREDIT AGREEMENT

This Credit Agreement, together with the credit application submitted by Applicant, any Prime Vendor Agreement(s) or other servicing agreement(s), and stated invoice terms, constitute an agreement among Applicant and AmerisourceBergen Drug Corporation and Bellco Drug Corp. (individually, "Vendor" and collectively, "Vendors"). Applicant understands and agrees to the following terms and conditions of sale with respect to the purchase of goods and services from each Vendor.

1. **Payment Terms.** If Applicant enters into a Prime Vendor Agreement or any other individual servicing agreement, the specific payment terms are as stated in such agreement. Otherwise, specific payment terms are stated on the invoice delivered to Applicant. The following terms apply to all purchases of goods and services unless the Prime Vendor Agreement or other individual service agreement provides otherwise, in which event the terms of the Prime Vendor Agreement or other individual service agreement will control: (a) All payments must be deposited to Vendor's account during normal business hours by the date due. (b) Prices quoted include a discount in anticipation of payment within terms. Should payments be deposited to Vendor's account later than the due date, or if the payment is dishonored, Vendor will invoice Applicant for the unearned discount by recalculating the price of goods. A processing fee of $50 will be invoiced for each dishonored payment. © If payment is delinquent, Vendor may, in addition to Vendor's right to exercise other remedies, withhold any credits or payments to Applicant and assess a per-day late payment fee of the lower of 0.05% (18%/360) or the maximum rate permitted by law on the outstanding balances until paid, beginning on the first (1st) business day after such due date. Additionally, Vendor may adjust future Price of Goods to reflect Applicant's payment history. (d) Applicant agrees to promptly pay when invoiced all denied chargebacks for disallowed/ineligible contract pricing, and to look solely to the relevant manufacturer(s) and/or buying group(s) for redress. (e) Billing disputes must be filed with Vendor's Accounts Receivable Department by the earlier of thirty (30) days after receipt of the first statement containing the amount in dispute or the period set by a manufacturer for chargebacks. Otherwise, Applicant will be deemed to accept the accuracy of such statements and to waive its right to dispute the amount. (f) Drivers and Vendor employees cannot accept payment. (g) Drivers are not authorized to verify contents or quantities of packages. Applicant agrees that a receipt signed by a driver for any tote or package does not constitute evidence of the contents or value of the package. (h) Applicant acknowledges and understands that Vendor has the absolute right to change pricing or payment terms or suspend delivery of products to Applicant without any liability being incurred by Vendor.

2. **Security Agreement.** To secure all of Applicant's existing and future liabilities to Vendors and their affiliates, including the repayment of any amounts that Vendors (or either of them) may advance or spend for the maintenance or preservation of the Collateral (as defined below) or otherwise (collectively, the "Obligations"), Applicant grants to each Vendor a purchase money security interest in Inventory and Proceeds (to the extent allowed by applicable law) and a lien upon and security interest in all its personal property and any and all additions, substitutions, Accessions and Proceeds therein or thereof, wherever located, and now owned or hereafter acquired or arising, including the following (collectively, the "Collateral"): All of Applicant's (a) Accounts; (b) Inventory; (c) Chattel Paper; (d) Commercial Tort Claims as disclosed on Applicant's Financial Statements; (e) Deposit Accounts; (f) Documents; (g) Equipment; (h) General Intangibles; (i) Goods; (j) Instruments; (k) Investment Property; (l) Letter of Credit Rights; (m) insurance on all of the foregoing and the proceeds of that insurance; (n) Applicant's money and other property of every kind and nature now or at any time or times hereafter in the possession of or under the control of each Vendor; and (o) the Cash proceeds, Noncash proceeds and products of all of the foregoing and the Proceeds of other Proceeds. All capitalized terms used herein and not defined have the meaning set forth in the Uniform Commercial Code as in effect in any jurisdiction in which any of the Collateral may at the time be located (the "UCC"). Applicant authorizes each Vendor to file a UCC financing statement describing the Collateral as "all assets." Applicant will cooperate with each Vendor or any successor secured party in obtaining control with respect to the Collateral, including Deposit Accounts, Investment Property, Letter-of-Credit rights, electronic chattel paper and the like. Applicant hereby grants to each Vendor an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to such Vendor at law and in equity, including such rights and remedies available to such Vendor pursuant to this Credit Agreement. Vendors may at any time enforce Applicant's rights against Account debtors and Obligors. Applicant has the risk of loss of the Collateral. Applicant will not make any sales, leases or other disposition of any of the Collateral except in the ordinary course of business. Applicant will not grant any other security interest in any of the Collateral.

3. **Covenants.** (a) Applicant certifies that any information provided in the Credit Application or in connection with the Credit Application is true and complete. (b) Applicant will provide Vendors with such financial information as may be requested by any Vendor, and Applicant certifies that any such information will be true and complete. © Applicant will immediately notify Vendors of any change in its state of formation; the location of ownership of, or any intent to sell, close or materially modify its business operations; any name change or change of business form (e.g. sole proprietorship, partnership or corporation); and any legal action that in the event of an unfavorable outcome would jeopardize the ongoing viability of Applicant. (d) Applicant will immediately notify Vendors of the existence and nature of any Commercial Tort Claims that arise in favor of Applicant after the date of this Credit Agreement and will execute and deliver additional security agreements to Vendors with respect to any such Commercial Tort Claim. (e) Applicant will allow Vendors or any other third-party engaged by a Vendor access to Applicant's premises to inspect the Collateral and Applicant's books and records. (f) Applicant authorizes Vendors and any credit agency or any service engaged by a Vendor to obtain, verify or otherwise investigate any information, reference, statements, credit reports or other information obtained with respect to Applicant as either Vendor deems appropriate. (g) Applicant will maintain insurance sufficient to cover all indebtedness to each Vendor and name the applicable Vendor as the loss payee and additional insured. (h) Applicant will comply with all federal and state laws, including the Prescription Drug Marketing Act, and regulations and ordinances, including those adopted by Boards of Pharmacy, Drug Enforcement Administration, Food and Drug Administration, Medicare and Medicaid agencies, and all Vendors' policies, as amended from time to time, related to such laws including the Returned Goods Policy and any Declaration of Eligibility for Contract Pricing. (i) Applicant is responsible for any applicable sales tax and other charges imposed by federal, state, local or foreign governments on manufacture, sales, shipment, import, export or use of products or services (other than Vendor's income taxes). Applicant will provide applicable exemption certificates to Vendors. (j) The obligations, representations and covenants of Applicant to Vendors under this Credit Agreement will survive until all Obligations are indefeasibly paid in full.

4. **Events of Default.** The occurrence of any of the following will be an Event of Default under this Credit Agreement: (a) Applicant fails to pay when due any amount owing to any Vendor or its affiliates; (b) Applicant fails to comply with any of the provisions or covenants of this Credit Agreement or any other agreement now existing or hereafter entered into between Applicant and any Vendor or its affiliates; © Applicant makes any representation or warranty in this Credit Agreement, the credit application to which it is attached, any other agreement now existing or hereafter entered into between Applicant and any Vendor or its affiliates, or in any financial statement delivered to any Vendor or its affiliates that is untrue or incomplete in any aspect that any Vendor or its affiliates deems to be material; (d) Applicant transfers or disposes of any of the Collateral other than in the ordinary course of business; (e) Applicant, voluntarily or involuntarily, becomes subject to any proceeding under the Bankruptcy Code or any insolvency or receivership proceeding under federal or state law; (f) Applicant fails to comply with, or becomes subject to any administrative or judicial proceeding under any federal, state or local hazardous waste or environmental law, asset forfeiture or similar law which can result in the forfeiture of property, or other law where non-compliance may have a significant, adverse effect on the Collateral or the ability of Applicant to perform its Obligations; (g) Applicant discontinues in the business presently operated by it for a period of more than ten (10) consecutive days; (h) The death or incapacity of Applicant (if a sole proprietor), or any guarantor of the Obligations or the dissolution or liquidation of Applicant (if a corporation, partnership, joint venture, limited liability company or other entity); (i) The sale or transfer of the business or Applicant, in whole or in part, or a "Change in Control" in

Applicant: **DGN Pharmacy Inc. D/B/A Digeno's**
(Company Name)

Applicant; or (j) any Vendor's determination that there has been the occurrence of a material adverse change in the business, assets, financial condition or prospects of Applicant or any other person or entity obligated for the Obligations or the occurrence of an event which could reasonably be expected to result in such a material adverse change. "Change in Control" means (if applicable) the sale, transfer or assignment of all or any material portion of the assets of Applicant or of 25% or more of the voting equity in Applicant or a change in the power to vote 25% or more of the voting interest in Applicant.

5. **Remedies Upon Default.** Upon the occurrence of an Event of Default, any Vendor's may (a) accelerate and declare all Obligations immediately due and payable without demand or notice; (b) exercise all rights and remedies of a secured party under the UCC; (c) obtain the appointment of a receiver for Applicant's business or properties, to be vested with the fullest powers permitted under applicable law, without regard to the adequacy of the Collateral for the Obligations or the solvency of Applicant and Applicant shall be deemed to have consented to such appointment without the necessity of such Vendor to post a bond; and (d) exercise all other rights and remedies available to such Vendor at law or in equity. The rights and remedies provided in the Credit Agreement, in any other agreement between Vendor and Applicant or afforded by law or equity are cumulative and may be exercised concurrently, independently or successively. Vendor will not be deemed to have elected or waived any other remedies by the exercise of one or more remedies. Any forbearance or delay in the exercise of any right or remedy hereunder or as otherwise afforded by law will not be a waiver of or preclude the exercise of any such right or remedy.

6. **Costs and Expenses.** Upon the occurrence of an Event of Default or if a Vendor becomes a party to any suit or proceeding (including bankruptcy or insolvency proceedings) affecting Applicant, the Collateral or Vendor's interest therein, or if a Vendor engages counsel to collect any of the Obligations or to enforce or preserve any of the rights and remedies of Vendors under this Credit Agreement or any other agreement between Vendor and Applicant, Vendor's costs, expenses and reasonable counsel fees (including allocated fees and expenses of Vendor's in-house counsel), whether or not suit is instituted, will be paid by Applicant to Vendor on demand and, until paid will be additional Obligations under this Credit Agreement.

7. **Consent To Jurisdiction.** In any lawsuit initiated by Applicant against any Vendor, whether arising under this Credit Agreement or under any other agreement or undertaking between the parties, Vendors and Applicant hereby irrevocably consent to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania and of all Pennsylvania State Courts sitting in Chester County, Pennsylvania and any other court in the United States competent to hear appeals from such courts. In any lawsuit initiated by any Vendor against Applicant, Vendors and Applicant irrevocably consent to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and of all Pennsylvania State Courts sitting in Chester County, Pennsylvania and any other court in the United States competent to hear appeals from such courts, and Applicant waives any objection to improper venue and inconvenient forum for proceedings in any such court. Nothing in this Credit Agreement or in any other agreement between the parties will preclude Vendor from commencing or participating in actions or proceedings against Applicant in any other jurisdiction. Applicant irrevocably agrees to service of process by certified mail, return receipt requested, to the address of Applicant set forth in the attached credit application or any related agreement.

8. **Time to Assert Claims. Limitation on Damages.** Any claim against a Vendor will be barred unless commenced within one (1) year from the date the cause of action has accrued. IN ANY ACTION COMMENCED BY OR AGAINST A VENDOR, ARISING OUT OF OR RELATED TO THE SALES OF GOODS BY SUCH VENDOR TO APPLICANT, NO PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS OR REVENUE, LOSS OF BUSINESS OPPORTUNITIES, OR INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER.

9. **Governing Law.** This Credit Agreement and the rights and obligations of the parties will be construed, interpreted, and enforced in accordance with and governed by the internal laws and regulations, as amended, of the Commonwealth of Pennsylvania, without reference to conflict of laws principles.

10. **Waiver of Jury Trial.** THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A JURY TRIAL IN CONNECTION WITH LITIGATION COMMENCED BY OR AGAINST A VENDOR WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS (A) UNDER THIS CREDIT AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES AND (B) IN ANY MANNER CONNECTED WITH, RELATED TO OR INCIDENTAL TO TRANSACTIONS BETWEEN THE PARTIES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

11. **Successors and Assigns.** This Credit Agreement will inure to the benefit of and be binding upon the heirs, successors and assigns of each of the parties; provided, however, Applicant may not assign this Credit Agreement without the prior written consent of Vendors. Assignment of all or any part of this Credit Agreement by either party will not relieve it of responsibility of performing its obligations to the extent that they are not satisfied in full.

12. **Complete Agreement.** This Credit Agreement (along with the credit application and any Prime Vendor Agreement or other individual servicing agreement entered into by Application and one or more Vendors and invoice terms) represents the full and complete understanding of the parties with respect to the subject matter hereof and cannot be modified except by writing and signed by the party or parties to be bound. Nothing herein is intended to amend the terms of any outstanding loan transaction between Applicant and any of the Vendors or to in any way diminish, relinquish or terminate any of Vendors' rights to previously-provided collateral intended to secure any obligations of Applicant to any Vendor or its predecessors including, without limitation, any guaranty, letter of credit or other forms of collateral. If any term, covenant or condition of this Credit Agreement is held to be invalid, illegal or unenforceable under any present or future law, such term, covenant or condition will be deemed severable and the remainder of this Credit agreement will be unaffected. Captions are for convenience of reference only. Words, regardless of the number and gender used, will include any other number, singular or plural, any any gender, masculine, feminine, or neuter, as context requires. "And" includes "or." "Or" is disjunctive but not necessarily exclusive "Between" means "among" if more than two entities are involved. "Including" means "including but not limited to."

13. This Credit Agreement is not binding on Vendor unless accepted by Vendor in Chester County, Pennsylvania where this Credit Agreement is deemed made or, if earlier, upon the first shipment of products made by Vendor pursuant to this or a related agreement.

I/We have read and agree to the terms specified above, certify that all information provided is true and complete and intending to be legally bound hereby, enter into this Credit Agreement on behalf of Applicant.

APPLICANT: **DGN Pharmacy Inc**
(Name of Company)

By: _____ (SEAL)   Date: 6/2/20__
(Signature)
Name: Eres
Title:

By: _____ (SEAL)   Date: _____
(Signature)
Name:
Title:

[Please sign your name on the By: line and print your name and title]

# EXHIBIT B

Invoice Terms and Conditions

1. **PRICE.** Pricing for goods or services on this Invoice ("Goods") are subject to change by Seller without notice. Increases in labor, freight, goods and material costs before delivery plus applicable GPO fees and overhead may be invoiced to Buyer separately. For Goods sold at pricing based on Seller's acquisition cost, Seller may re-invoice Goods initially invoiced incorrectly. Pricing may be higher outside the continental U.S. or outside Seller's normal service area. Pricing based on Seller's acquisition cost may be adjusted due to changes in Seller's supplier relationships that adversely affect its operating margins. Premium services required by Buyer will be invoiced separately. Buyer will promptly reimburse Seller for unpaid chargebacks denied by a GPO or supplier or not paid within 45 days. Buyer will pay all taxes and other charges imposed by federal, state, local or foreign governments on manufacture, sale, shipment, import, export or use of Goods, other than Seller's income taxes ("Tax Liabilities").

2. **ORDER AND DELIVERY.** Except as otherwise provided, orders must be electronically transmitted and delivery is by common carrier FOB destination pursuant to Seller's instructions. Buyer assumes all risk of loss after delivery of Goods and must report damaged or lost Goods to carrier at delivery or within two days. Orders may be subject to minimum order size or small order fee. Shipping, delivery and performance dates are approximate and not guaranteed.

3. **FORCE MAJEURE.** Seller is not liable for delays or other failures due to causes beyond its control, including acts of Buyer, labor disputes, fire, terrorism or other casualty, acts of God, delays or shortages of transportation, products, materials, labor or fuel from Seller's usual sources at customary prices, loss of facilities, network or utility disruption, or voluntarily foregoing a right in order to comply with or accommodate government orders, requests or laws ("Force Majeure"). During any Force Majeure period, Seller may without further liability or obligation to Buyer (a) postpone performance, (b) reduce or eliminate Goods; (c) allocate available Goods among its customers as Seller determines; and (d) if Force Majeure affects Seller's cost of operations, add to the cost of Goods its increased fuel costs, including taxes, and other costs associated with handling Goods and operations, so long as Force Majeure affects its costs. Partial cancellation will not affect Buyer's duty to pay for partial performance.

4. **WARRANTY AND REMEDY.** Unless otherwise expressly stated on this Invoice, Seller is not the manufacturer of Goods. SELLER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE, FOR GOODS OR SERVICES. Seller's only obligation and Buyer's only remedy for breach of any warranty will be for Seller, at its option, to reperform services, repair or replace any defective Goods at Seller's distribution center (Buyer paying shipping) or refund the price paid to the extent of any claim. THE FOREGOING SUPERSEDES ALL ORAL WARRANTIES AND REPRESENTATIONS, AND WRITTEN WARRANTIES AND REPRESENTATIONS THAT ARE NOT EXPRESSLY DESIGNATED IN WRITING AS SELLER'S "WARRANTY," INCLUDING THOSE MADE OR IMPLIED IN ANY MANUAL, LITERATURE, ADVERTISING OR OTHER MATERIALS.

5. **LIMITATIONS.** Seller's liability for claims, including negligence, will not exceed the price of specific Goods that give rise to a claim. Seller disclaims all liability related to Goods drop shipped from suppliers to Buyer, even if it provides invoicing services. IN NO EVENT WILL SELLER BE LIABLE FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, OR FOR DAMAGES IN THE NATURE OF PENALTIES IN CONNECTION WITH OR RELATED TO GOODS, HARDWARE, SOFTWARE, INCLUDING ORDERING SOFTWARE, OR SERVICES. Buyer must give prompt written notice of any loss or damage of Goods and must commence any related action within one year after the Invoice date.

6. **INDEMNIFICATION AND WAIVER.** Buyer will defend, indemnify, and hold harmless Seller, its officers, directors, representatives and affiliates ("Seller Parties") from any loss or claim against Seller Parties with respect to Goods arising in whole or in part out of (a) failure of Buyer, its agents, employees or customers ("Buyer Parties") to follow specifications, warnings or recommendations; (b) failure of Buyer Parties to comply with applicable legal requirements, including licensing; (c) failure to comply with "own use" or other supplier requirements or misuse of Goods by Buyer Parties; (d) misrepresentation by Buyer Parties; (e) negligence of any Buyer Party; (f) Tax Liabilities; or (g) alleged infringement of any patent, trademark or copyright as a result of performance pursuant to Buyer Parties' specifications. Each Buyer Party hereby waives and releases Seller Parties from all rights of contribution or indemnity to which it is otherwise entitled.

7. **BUYER'S CANCELLATION.** Buyer may only cancel Goods by written notice to Seller and paying reasonable cancellation charges including (a) the price of Goods delivered or completed before Seller's receipt of such notice, (b) all costs previously incurred in connection with sale and delivery of Goods; (c) a reasonable profit; and (d) Seller's expenses incurred due to such cancellation.

8. **ADVICE AND ASSISTANCE.** Upon request, Seller may in its discretion furnish to Buyer technical advice or assistance regarding Goods as an accommodation. Seller assumes no obligation or liability for such advice or assistance given or results obtained, which are at Buyer's sole risk.

9. **SELLER'S PROPRIETARY RIGHTS.** All drawings, software programs, inventions or improvements made by or for Seller in connection with Goods are Seller's property and Buyer may not reproduce or transfer them. Buyer may not use or disclose Seller's trade secrets or confidential information, whether or not designated as such, except as required in connection with use of Goods. Buyer may not disclose any pricing or other terms to Seller's competitors or use them in negotiations in order to reach an agreement with another party.

10. **SECURITY AGREEMENT; CREDIT AND COLLECTION.** To secure payment for Goods or otherwise, Seller hereby retains a security interest in Goods delivered and this Invoice will be a security agreement under the Uniform Commercial Code. Buyer authorizes Seller as its attorney to execute and file on Buyer's behalf all documents Seller deems necessary to perfect such security interest. Payment must be received in Seller's account during normal business hours on the date due and is not subject to reduction, set-off or counterclaim. Pricing reflects a prompt payment discount. If payment is not received by the due date, Seller will invoice Buyer such unearned discount by recalculating pricing (at Seller's acquisition cost + 2% or Invoice price + 2%, if greater) as of the due date. Thereafter, if payment is late, Seller may withhold any payments to Buyer and assess a per-day late payment fee of the lower of 0.05% (18%/360) or the maximum rate permitted by law on the outstanding balance until paid, beginning on the first business day after such date due. Additionally, Seller may adjust future pricing to reflect Buyer's payment history. Seller is relying upon Buyer's representation of solvency and if Seller at any time reasonably believes that Buyer is insolvent or its credit is impaired, Seller may without liability to Buyer withhold performance, change payment terms, require full or partial payment in advance, repossess Goods previously delivered or take other permitted actions, each of which is an additional remedy and does not relieve Buyer's obligation to make prompt payment. If Buyer's payment is late, Buyer will pay Seller's collection costs and attorney's fees, including those to enforce its rights in a bankruptcy proceeding.

11. **GENERIC SUBSTITUTIONS.** Seller may substitute generically equivalent Goods from a different manufacturer without prior notice. BUYER IS SOLELY RESPONSIBLE FOR VERIFYING ACCURACY AND SUITABILITY OF GENERIC SUBSTITUTES.

12. **RETURNS.** Seller must authorize all returns in writing. Seller will not accept returns unless Buyer guarantees that any Goods it returns were handled in compliance with the Prescription Drug Marketing Act, other laws and Seller's return policies and may refuse Goods not purchased from Seller. If Buyer ever attempts to return any counterfeit, adulterated or other Goods that do not comply with its return authorization, Seller may refuse it and all future returns from Buyer. Seller may deduct restocking, handling and return freight charges from any return credit. Manufacturers' policies may restrict Seller from accepting return of certain Goods. Seller may refuse return of marked, soiled, or otherwise unsaleable Goods, including Goods unsaleable due to PDMA or other laws.

13. **CLAIMS.** Buyer must report claims to Seller promptly and comply with Seller's policies, giving Invoice date, number and other necessary information. Audits by Buyer must comply with Seller's audit policies.

14. **ALLOWANCES AND DISCOUNTS.** This Invoice may not reflect all pending allowances and discounts for Goods. Buyer must comply with all laws and accurately report and reflect allowances and discounts to federal, state and private payors and retain this Invoice and related documentation and make them available to federal, state and private payor representatives.

15. **MISCELLANEOUS.** Terms of this Invoice and Seller's other standard terms supplement but do not change any formal written agreement together; they are the entire agreement between Buyer and Seller for Goods. No modification will bind Seller unless in a formal written agreement, signed by Seller's authorized officer. Seller expressly rejects different or additional terms in Buyer's order and Buyer must acceptance these exact terms. Accepting Goods and payment will be deemed acceptance of such terms. No waiver by Seller of Buyer's default will waive any other default. Captions have no substantive significance. Internal Pennsylvania law governs this Invoice. Arbitration is not acceptable to Seller. All provisions of this Invoice are severable. Words, regardless of number and gender used, include any other number or gender the context requires. "And" includes "or." "Or" is disjunctive but not necessarily exclusive. "Including" means "including but not limited to."

16. **EQUAL OPPORTUNITY.** Seller will not discriminate against any employee or applicant because of race, creed, color, national origin, religion, gender, sexual preference, veteran status, handicap or any other ground prohibited by law and will meet affirmative obligations imposed by law.

All prescription drugs purchased by Seller or its affiliate for distribution in the U.S. are purchased directly from manufacturers (or their exclusive distributors).

# EXHIBIT C

# AmerisourceBergen

**STATEMENT**  Number: 52594441  Date: 01-03-2014  1 of 2

**Division:** AMERISOURCEBERGEN DRUG CORP
5100 JAINDL BLVD.
BETHLEHEM      PA      18017-9434
877-313-8930

**Remit To:** AMERISOURCEBERGEN DRUG CORP
PO Box 29808
NEW YORK      NY      10087-9808

**Customer:** DIGINO'S APOTHECARY
DGN PHARMACY INC
255 VALLEY BOULEVARD
WOOD RIDGE      NJ      07075-1201
Account: 100090475  / 023136069

**Summary:**
| | |
|---|---:|
| Not Yet Due: | 2,765.10 |
| Current: | 921.70 |
| Past Due: | 281,076.34 |
| Total Due: | 281,998.04 |
| Account Balance: | 284,763.14 |

## Account Activity

| Activity Date | Due Date | Reference Number | Purchase Order Number | Activity Type | Amount |
|---|---|---|---|---|---:|
| 08-22-2013 | 08-16-2013 | DATING 10/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-23-2013 | DATING 11/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-23-2013 | DATING 12/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-30-2013 | DATING 13/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-30-2013 | DATING 14/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-30-2013 | DATING 15/ | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 09-06-2013 | DATING 16/ | | Customer Invoice | 22,379.10 |
| 08-22-2013 | 08-09-2013 | DATING 4/1 | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-16-2013 | DATING 7/1 | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-16-2013 | DATING 8/1 | | Customer Invoice | 22,379.15 |
| 08-22-2013 | 08-16-2013 | DATING 9/1 | | Customer Invoice | 22,379.15 |
| 09-24-2013 | 08-09-2013 | AR INQ TP | | Customer Document | 21,250.15 |
| 09-30-2013 | 11-01-2013 | 800949069 | | PEP Rebate | (403.94) |
| 10-15-2013 | 11-15-2013 | 800958826 | | Customer Credit Memo | (4.42) |
| 10-18-2013 | 11-15-2013 | 800962591 | | Late Charge fee | 7,609.19 |
| 10-25-2013 | 11-22-2013 | 800962998 | | Late Charge fee | 923.11 |
| 11-01-2013 | 11-29-2013 | 800972604 | | Late Charge fee | 923.11 |
| 11-08-2013 | 12-06-2013 | 800980556 | | Late Charge fee | 921.72 |
| 11-15-2013 | 12-13-2013 | 800988588 | | Late Charge fee | 921.72 |
| 11-22-2013 | 12-20-2013 | 800994585 | | Late Charge fee | 921.70 |
| 11-29-2013 | 12-27-2013 | 800997549 | | Late Charge fee | 921.70 |
| 12-06-2013 | 01-03-2014 | 801002743 | | Late Charge fee | 921.70 |
| 12-13-2013 | 01-10-2014 | 801003129 | | Late Charge fee | 921.70 |
| 12-20-2013 | 01-17-2014 | 801010698 | | Late Charge fee | 921.70 |
| 12-27-2013 | 01-24-2014 | 801011053 | | Late Charge fee | 921.70 |
| 01-03-2014 | 01-31-2014 | 801020634 | | Late Charge fee | 921.70 |

## Reminders

| Due Date | Amount |
|---|---:|
| 08-09-2013 | 43,629.30 |
| 08-16-2013 | 89,516.60 |
| 08-23-2013 | 44,758.30 |
| 08-30-2013 | 67,137.45 |
| 09-06-2013 | 22,379.10 |
| 11-01-2013 | (403.94) |
| 11-15-2013 | 7,604.77 |
| 11-22-2013 | 923.11 |
| 11-29-2013 | 923.11 |
| 12-06-2013 | 921.72 |
| 12-13-2013 | 921.72 |
| 12-20-2013 | 921.70 |
| 12-27-2013 | 921.70 |
| 01-03-2014 | 921.70 |
| 01-10-2014 | 921.70 |
| 01-17-2014 | 921.70 |
| 01-24-2014 | 921.70 |

Processing Number  0000000570313537

**AmerisourceBergen®**   STATEMENT   Number: 52594441   Date: 01-03-2014   2 of 2

| Reminders | |
|---|---|
| **Due Date** | **Amount** |
| 01-31-2014 | 921.70 |
| Total Due: | 281,998.04 |
| Terms: | |
| Monday - Friday due in 28 days | |